```
                  UNITED STATES DISTRICT COURT
                  NORTHERN DISTRICT OF INDIANA
                       HAMMOND DIVISION


SQUARE D COMPANY,              )
                               )
          Plaintiff            )
                               )
     v.                        )  Case No. 2:06 cv 426
                               )
SHOWMEN SUPPLIES, INC., JIANGXI)
SUNHONG ELECTRIC COMPANY,      )
TIANJIN SHUANGHAO, KOLUEN LIGHT)
INDUSTRIAL IMPORT & EXPORT CO.,)
                               )
          Defendants           )
```

OPINION AND ORDER

This matter is before the court on the Motion to Stay filed by the defendant, Showmen Supplies, Inc., on February 1, 2007, and the Motion for Hearing on Defendant Showmen Supply Inc.'s Motion to Stay the Present Case filed by the plaintiff, Square D Company, on February 20, 2007.  For the reasons set forth below, the motion to stay and the motion for a hearing are **DENIED.**

Background

The plaintiff, Square D Company, is a manufacturer and supplier of electrical distribution products for both commercial and consumer use.  (Complaint p. 2)  Square D's products include residential circuit breakers, electric panels, and switches. (Compl. p. 4)  The defendant, Showmen Supplies, Inc., is a distributor of specialty electrical and lighting equipment, primarily to the amusement, entertainment, and portable power generation businesses.  (Defendant's Memorandum p. 5)  Although Showmen

is not a licensed distributor of Square D products, Showmen has purchased and sold Square D brand circuit breakers since 1970. (Def. Memo p. 5; Compl. p. 2)

Square D alleges that Showmen purchased and sold counterfeit Square D circuit breakers in violation of the Lanham Act, 15 U.S.C. §1051 *et. seq.*, causing injury to the reputation and goodwill of Square D, as well as lost sales. (Compl. pp. 9-12) In its complaint, Square D describes the dangers associated with counterfeit circuit breakers, including the safety risks present when a circuit breaker malfunctions. (Compl. p. 6) Square D seeks damages as well as an injunction restraining Showmen from dealing in counterfeit Square D products and requiring Showmen to account for every purchase and sale of counterfeit Square D circuit breakers in which Showmen was involved. (Compl. pp. 12-13)

Scott Siefker is the Vice President and General Manager of Showmen Supplies, Inc. (Def. Memo p. 1) In the middle of 2005, Siefker, on behalf of Showmen, contacted Andy Barnard, who represented a company in China, in order to obtain Square D circuit breakers. (Def. Memo pp. 5-6) Through this relationship, Showmen placed an order for Square D circuit breakers in the amount of $36,000. (Def. Memo p. 6) Around the time that Showmen received the circuit breakers ordered through Barnard, Showmen learned that one of its customers had obtained counterfeit circuit breakers from a Chinese supplier. (Def. Memo p. 6) After learning of the potentially counterfeit supply, Siefker inspected Showmen's inventory and determined that it likely included coun-

2

terfeit breakers.  (Def. Memo p. 7)  Siefker segregated the suspected counterfeit Square D circuit breakers from the rest of the inventory and directed that they not be sold or otherwise disposed of.  (Def. Memo p. 7)  Showmen asserted that none of the counterfeit products were sold.  (Def. Memo p. 7)

In response to a subpoena served by Square D, Showmen made available for Square D's inspection several boxes of records relating to Showmen's purchase of the counterfeit circuit breakers, as well as the circuit breakers themselves.  (Def. Memo p. 8)  Square D inspected the documents and circuit breakers on October 18, 2006, and inspected and photographed the counterfeit circuit breakers and the containers in which they were shipped.  (Def. Memo pp. 8-9)  Square D also removed samples of the counterfeit circuit breakers. (Def. Memo p. 9)

On November 21, 2006, Special Agent Phillip Coduti of the U.S. Customs Office executed search warrants on Showmen's premises in LaPorte, Indiana, as well as the home of Siefker's mother, where Showmen's accounting records were kept.  (Def. Memo p. 10)  The federal agents seized all of the counterfeit Square D circuit breakers and Showmen's banking, financial, and sales records, which largely remain in the government's custody.  (Def. Memo p. 10)  Showmen and Siefker were informed through their attorney's communication with Special Agent Coduti, that they are the targets of an ongoing federal criminal investigation regarding the purchase of the counterfeit Square D circuit breakers.

3

(Def. Memo pp. 10-11) Showmen seeks to stay these proceedings in light of the criminal investigation.

## Discussion

A court has the authority to stay proceedings, which stems from its inherent power to manage its docket. ***Landis v. North American Co.***, 299 U.S. 248, 254-255, 57 S.Ct. 163, 165, 81 L.Ed. 153 (1936); ***Walker v. Monsanto Co. Pension Plan***, 472 F.Supp.2d 1053 (S.D. Ill. 2006). The decision to grant a stay is committed to the sound discretion of the court and must be exercised consistent with principles of fairness and judicial economy. ***Brooks v. Merck & Co.,*** 443 F.Supp.2d 994, 997 (S.D. Ill. 2006); ***Rutherford v. Merck & Co.***, 428 F.Supp.2d 842, 845 (S.D. Ill. 2006); ***George v. Kraft Foods Global***, 2006 U.S. Dist. LEXIS 92886, *4 (S.D. Ill. 2006).

The Constitution does not require a stay of civil proceedings pending the outcome of criminal proceedings. ***Jones v. City of Indianapolis***, 216 F.R.D. 440, 450 (S.D. Ind. 2003). Rather, granting a stay is the exception, not the rule. ***Board of Trustees of the Ironworkers Local No. 498 Pension Fund v. Nationwide Life Ins. Co.***, 2005 U.S. Dist. LEXIS 6159 at *26 (N.D. Ill. 2005). Additionally, it is not unconstitutional to force a litigant to choose between invoking the Fifth Amendment in a civil case, thus risking the negative inference permitted in that situation, or answering questions in the civil context, thus risking subsequent criminal prosecution. ***Cruz v. County of DuPage***, 1997 WL 370194 at *1 (N.D. Ill. 1997). The court may, in its discretion, stay

civil proceedings or issue protective orders when the interests of justice require.  *Jones*, 216 F.R.D. at 450-51.

When deciding whether to issue a stay in a civil proceeding pending a similar criminal proceeding, courts assess a set of factors.  *See* **Benevolence International Foundation Inc., v. Ashcroft**, 200 F.Supp.2d 935, 938 (N.D. Ill. 2002); **Hollinger International, Inc. v. Hollinger Inc.**, 2005 U.S. Dist. LEXIS 14437, *9-10 (N.D. Ill. 2005); *Jones*, 216 F.R.D. at 450.  The court must examine 1) the posture of the criminal proceedings, 2) whether there is an overlap of issues in the civil and criminal proceedings, 3) whether both the civil and criminal proceedings are brought by the government, 4) the burden on defendants if a stay is not granted, 5) the potential prejudice to plaintiff if the civil proceedings are delayed, and 6) the interests of the public, courts, and third parties in granting or denying a stay. *Hollinger*, 2005 U.S. Dist. LEXIS 14437 at *9-10.

Showmen argues that, absent a stay, Siefker will be forced to exercise his Fifth Amendment privilege, risking an adverse inference, to avoid revealing information that would otherwise be protected under the criminal discovery rules.  Square D focuses its opposition on the fact that Siefker has not been indicted.

The Fifth Amendment privilege against self-incrimination may be invoked in criminal or civil matters when an individual's testimony creates a possibility of criminal prosecution. **Kastigar v. United States**, 406 U.S. 441, 444, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972). The privilege is applicable in response to specific

5

inquiries that call for the admission of a crime or objectively create "some tendency" to subject the individual to criminal liability. *In re High Fructose Corn Syrup Antitrust Litigation*, 295 F.3d 651, 663-64 (7th Cir. 2002). The privilege may be waived when a party voluntary testifies to incriminating facts. *Rogers v. United States*, 340 U.S. 367, 373, 71 S.Ct. 438, 442, 95 L.Ed. 344 (1951); *Harris v. City of Chicago*, 266 F.3d 750, 754 (7th Cir. 2001). *See also Mitchell v. Zenon Construction Company*, 149 F.R.D. 513, 514 (D. V.I. 1992).

The privilege is acknowledged widely as a personal, individual right. *Braswell v. United States*, 487 U.S. 99, 117, 108 S.Ct. 2284, 2295, 101 L.Ed.2d 98 (1988). Corporate entities have no privilege against self-incrimination under the Fifth Amendment to the United States Constitution. *Nowaczyk v. Matingas*, 146 F.R.D. 169, 177 n.4 (N.D. Ill. 1993) (*citing U.S. v. Kordel*, 397 U.S. 1, 7-8, 90 S.Ct. 763, 767, 25 L.Ed.2d 1 (1970)). Additionally, corporations cannot assert the individual privilege against self-incrimination held by their employees. *Nowaczyk*, 146 F.R.D. at 177 n.4. *See also Braswell*, 487 U.S. at 117, 108 S.Ct. at 2295 ("[A] corporate custodian is not entitled to resist a subpoena on the ground that his act of production will be personally incriminating.").

In light of its indefinite nature, Fifth Amendment grounds for ordering a stay generally are viewed as premature when no indictment has been issued. *U.S. ex rel. Shank v. Lewis Enterprises, Inc.*, 2006 WL 1064072, *3 (S.D. Ill. 2006)(*citing FTC v.*

6

*Pac. First Benefit, LLC*, 361 F.Supp.2d 751, 755-56 (N.D. Ill. 2005); *U.S. v. All Meat and Poultry Products Stored at Lagrou Cold Storage*, 2006 WL 27119 at *3 (N.D. Ill. 2006)).

Showmen's use of the Fifth Amendment privilege to support staying this matter is unable to clear multiple obstacles. The threshold concern militating against a stay is that Showmen, who has no Fifth Amendment privilege, has asserted the rights of Siefker, who is not a defendant in this matter. Further, Siefker has testified, pursuant to his declaration, regarding the purchase, receipt, and discovery of the counterfeit nature of the circuit breakers. In support of its motion to stay, Showmen has not described anything more than the assertion of a generalized privilege, which ultimately could be found to have been waived when, and if, a properly specific privilege is asserted by Seifker.

Leaving aside these concerns, the uncertainty whether an indictment will be returned further counsels against staying this matter. Looking specifically to the factors that courts address when considering the stay of a parallel civil proceeding illustrates the relationship between these considerations and the rationale that emphasizes the existence of an indictment.  For instance, courts routinely state that a critical factor when analyzing the propriety of a stay is "whether the investigation has ripened into an indictment." *Hollinger*, 2005 U.S. Dist. LEXIS 14437 at *11 (*citing* *SEC v. Dresser Indus., Inc.*, 628 F.2d 1368, 1376 (D.C. Cir. 1980) ("The strongest argument for defer-

7

ring civil proceedings until after the completion of criminal proceedings is where a party under indictment for a serious offense is required to defend a civil or administrative action involving the same matter."). Conversely, when no indictment has been issued, the argument for staying civil proceedings is considerably weaker. *Sterling National Bank v. A-1 Hotels International*, 175 F.Supp.2d 573, 577 (S.D.N.Y. 2001)(noting that the "contours of the indictment" are necessary to determine the extent of the threat to the party's Fifth Amendment rights); *Hollinger*, 2005 U.S. Dist. LEXIS 14437 at *12-13.

Similarly, the degree of overlap between the civil and criminal proceedings is speculative when no indictment exists. While the facts of this case lead to some natural conclusions that substantial overlap could be presented, the court also recognizes that this factor is most often a consideration when the government has initiated both the civil and criminal proceedings.  The court's concern is the risk of the government's use of the broad scope of civil discovery to obtain information for use in the criminal prosecution.  *Shank*, 2006 WL 1064072 at *4 (*citing Dresser Indus., Inc.*, 628 F.2d at 1376).  This concern is not applicable here when the civil action is brought by a private plaintiff and the government has not initiated criminal prosecution.

The burden upon Showmen if no stay is issued is reduced due to the pre-indictment posture of this matter. Showmen's primary concern is with the potential Fifth Amendment implications that

8

would arise when Siefker is called to testify in the civil case, recognizing that adverse inferences may be drawn from Fifth Amendment silence in civil cases. *LaSalle Bank Lake View v. Seguban*, 54 F.3d 587, 590 (7th Cir. 1995).  However, it is not unconstitutional to place litigants in the situation of having to choose between their Fifth Amendment privilege or the adverse inference that may be drawn from the exercise of that privilege. *Cruz*, 1997 WL 370194 at *3.  Furthermore, in support of the present motion, Showmen submitted affidavits from Siefker, undermining its contention that Siefker or Showmen will suffer substantial prejudice should Siefker be forced to choose between testifying or invoking his Fifth Amendment privilege and risking the adverse inferences drawn therefrom.

Showmen also argues that it will be forced to defend two lawsuits simultaneously and thus will be subject to an unwarranted financial burden.  However, currently no criminal indictment has yet been issued, and Showmen is defending only one lawsuit. Further, indefinitely delaying this matter risks prejudice to the plaintiff as well as hindering the court's interest in bringing cases "to an expeditious conclusion." *Nowaczyk*, 146 F.R.D. at 175; *Hicks v. City of New York*, 268 F.Supp. 2d 238, 241 (E.D.N.Y. 2003)("In general, absent a showing of undue prejudice to the defendant or interference with his constitutional rights, there is no reason why a plaintiff should be delayed in his efforts to diligently proceed to sustain his claim.").

9

Finally, Showmen notes that because it has prevented the counterfeit products that it purchased from entering the market, the risks to public are minimized. While the court agrees that this factor is at least neutral, this is not sufficient to overcome the presumption that this case should diligently proceed. In its reply brief, Showmen argues for the first time for a limited stay of 120 days, suggesting that this should provide the U.S. Attorney with sufficient time to complete an investigation. Showmen assumes that at the conclusion of this period, either criminal charges will be brought, recasting the balancing of factors in favor of a stay, or the investigation will have terminated without charges, obviating the need for a stay. Showmen, however, presents no reason to support the assumption that within 120 days there will be certainty regarding the investigation. Accordingly, this is an insufficient basis on which to grant a stay. *See **Sterling National Bank***, 175 F.Supp.2d at 577 ("There is no telling how complicated the government's investigation may be, whether the allegations of the particular civil plaintiff are merely the tip of an iceberg that will result in lengthy and open-ended investigation, what priority the government assigns to the investigation, whether it will result in charges that will have to be litigated, or how time-consuming the resulting criminal case will be.").

_____

For the foregoing reasons, the Motion to Stay filed by the defendant, Showmen Supplies, Inc., on February 1, 2007, and the

Motion for Hearing on Defendant Showmen Supply Inc.'s Motion to Stay the Present Case filed by the plaintiff, Square D Company, on February 20, 2007, are **DENIED**.

    ENTERED this 14th day of May, 2007


                                            s/ ANDREW P. RODOVICH
                                               United States Magistrate Judge